```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

MICHAEL SMITH,

                       Plaintiff,

       -vs-                             **No. 1:16-CV-00295 (MAT)**
                                            **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                       Defendant.
_____

**I.  Introduction**

Represented by counsel, Michael Smith ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this decision and order.

**II.  Procedural History**

The record reveals that in August 2013, plaintiff (d/o/b December 12, 1965) applied for DIB and SSI, alleging disability as of August 10, 2012. After his application was denied, plaintiff requested a hearing, which was held before administrative law judge

Robert T. Harvey ("the ALJ") on August 13, 2014. The ALJ issued an unfavorable decision on August 21, 2014. The Appeals Council denied review of the ALJ's decision and this timely action followed.

**III. The ALJ's Decision**

Initially, the ALJ found that plaintiff met the insured status requirements of the Act through March 31, 2016. At step one of the five-step sequential evaluation process, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 10, 2012, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the severe impairments of status post left shoulder reconstruction, impulse control disorder, antisocial personality disorder, substance disorder, and discogenic cervical spine. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. In considering plaintiff's mental impairments, the ALJ found that plaintiff had mild restrictions in activities of daily living ("ADLs") and maintaining concentration, persistence, or pace, and moderate difficulties in social functioning.

The ALJ placed the following pertinent nonexertional limitations on plaintiff's residual functional capacity ("RFC"): "occasional limitations in the ability to understand, remember and carry out detailed instructions; occasional limitations in the ability to interact appropriately with the public; occasional limitations in the ability to deal with stress; and occasional

2

limitations in the ability to make decisions." T. 22. At step four, the ALJ found that plaintiff was unable to perform past relevant work. At step five, the ALJ determined that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which plaintiff could perform.

**IV. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff's sole contention is that the ALJ's RFC assessment conflicts with the relevant medical opinions regarding plaintiff's mental limitations. The record reveals that plaintiff was treated at Lakeshore Behavioral Health from approximately July 2013 through August 2014. His treating mental health counselor, Earnest Donaldson, LMHC, submitted a mental RFC questionnaire in September 2013, reporting that plaintiff suffered from bipolar disorder and antisocial personality disorder. However, LMHC Donaldson declined to fill out any of the functional areas of the form. On August 1, 2014, LMHC Donaldson submitted a letter, stating that he declined

3

to give a functional assessment because he did "not not observe or have any opportunity to determine how [plaintiff] responds in a work environment." T. 431.

On October 16, 2013, state agency psychologist Dr. Susan Santarpia completed a consulting psychiatric evaluation. Dr. Santarpia opined that plaintiff "present[ed] as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and learn new tasks within normal limits." T. 354. According to Dr. Santarpia, plaintiff demonstrated mild impairment "performing complex tasks independently and appropriately dealing with stress," and moderate impairment "in making appropriate decisions and relating adequately with others." T. 354-55. She opined that plaintiff's "[d]ifficulties [were] caused by distractibility." Id.

In a mental RFC assessment performed by reviewing psychologist Dr. Joel Straussner, Dr. Straussner opined that plaintiff was moderately limited in interacting with coworkers and the general public. Dr. Straussner additionally opined, as relevant here, that plaintiff was moderately limited in accepting instructions and responding appropriately to criticism from supervisors, as well as getting along with coworkers or peers without distracting them or causing behavioral extremes.

The ALJ gave some weight to Dr. Santarpia's consulting opinion, stating specifically that he gave little weight to her

4

opinion that plaintiff's prognosis was "guarded, as the record reflect[ed] that the claimant's condition could improve when he [was] compliant with treatment and refrain[ed] from abusing substances." T. 25-26. The ALJ explained that he considered plaintiff less than fully credible as to his allegations of mental health limitations, citing Dr. Santarpia's unremarkable findings on consulting examination and the overall consistency of Dr. Santarpia's findings with plaintiff's mental health treatment record, during which plaintiff was assessed with, at most, moderate symptoms as indicated by GAF scores.[1] The ALJ did not explicitly weigh Dr. Straussner's opinion, but found that it was "consistent with [plaintiff's] medical record, including the assessed GAF score of 55 and consistent with [the ALJ's RFC finding]." T. 30.

Plaintiff contends that the ALJ's RFC finding was inconsistent with the opinions of Drs. Santarpia and Straussner. Specifically, plaintiff argues that the ALJ committed reversible error in finding occasional limitations in dealing only with the general public, as opposed to finding limitations in dealing with the general public as well as with coworkers and supervisors. As noted above, the ALJ found that plaintiff had occasional limitations in the ability to understand and carry out detailed instructions, occasional

---

[1] See See generally American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV"), at 34 (4th ed. rev. 2000) (describing global assessment of functioning ("GAF") scoring). Scores between 51 and 60 indicate moderate symptoms, such as flat affect, circumlocutory speech, occasional panic attacks, or moderate difficulty in social, occupational, or school functioning. See id.

limitations in interacting appropriately with the public, and occasional limitations in dealing with stress and making decisions.

As plaintiff points out, a limitation in interacting with the public is not equivalent to a limitation interacting with coworkers or supervisors. See, e.g., Nickens v. Colvin, 2014 WL 4792197, *2 (W.D. Pa. Sept. 23, 2014) ("The public, supervisors, and co-workers are distinct groups, and are separately addressed on the Defendant's mental residual capacity forms. Thus, limitations on two of these types of interactions in the RFC does not account for limitations on the third."); see also Tilles v. Comm'r of Soc. Sec., 2015 WL 1454919, *4 n.5 (S.D.N.Y. Mar. 31, 2015) (recognizing that "[a] limitation to interacting with co-workers and supervisors . . . on the one hand is not the same as a limitation with just interacting with coworkers," but distinguishing the facts of the case cited for that proposition) (citing Medley v. Astrue, 2011 WL 6840576 (N.D. Tex. Dec. 29, 2011)).

Moreover, a close review of this record reveals that the ALJ understood that these social groups were distinct. At plaintiff's hearing, the ALJ posed a hypothetical question to the vocational expert ("VE") and recited the RFC ultimately found in the ALJ's decision; the VE responded that an individual with such limitations could perform the jobs of mail clerk or small products assembler. However, when the ALJ added nonexertional limitations to the hypothetical, including, among others, limitations in ability to respond appropriately to criticism from supervisors and getting

6

along with coworkers or peers, the VE responded that such an individual could not perform any work. It is unclear whether the VE's response to the second hypothetical turned on limitations in interaction with coworkers or supervisors, whether it was based on other additional limitations given in the second hypothetical, or whether it hinged on some combination of the two. Cf. Nickens, 2014 WL 4792197, at *2 (noting that where hypothetical failed to include limitations in interactions with supervisors, this error "infect[ed] the hypothetical to the vocational expert").

The ALJ's decision failed to explain why he rejected the limitations opined by Drs. Santarpia and Straussner regarding plaintiff's ability to get along with others. This error is not harmless because it frustrates the Court's ability to perform meaningful review, and because it appears, from the VE's testimony, that the outcome of this case could change with inclusion of additional social limitations. See, e.g., Raymer v. Colvin, 2015 WL 5032669, *6 (W.D.N.Y. Aug. 25, 2015) (quoting Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 298 ("With no explanation provided, it is not possible for the [c]ourt to know why . . . the ALJ chose to disregard the evidence that was more favorable to plaintiff's claim[;][h]er failure to reconcile the RFC assessment with medical source statements was error, and based upon the testimony given by the vocational expert, the failure was not harmless"); Newsome v. Astrue, 817 F. Supp. 2d 111, 134 (E.D.N.Y. 2011) ("Although applying the wrong legal standard might not

require reversal if the error did not affect the outcome, that is not the situation here.").

Accordingly, this case is reversed and remanded for further administrative proceedings consistent with this decision and order. On remand, if the ALJ elects to reject any portions of the medical opinion evidence, he is directed to explain why those portions were rejected and how the substantial evidence of record supports his ultimate RFC determination.

**V.  Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 12) is denied and plaintiff's motion (Doc. 10) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this decision and order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    February 7, 2017
          Rochester, New York